IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:25-CV-889

| | |
|---|---|
| SYLVESTER M. SYLVAN, JR., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>QUAIL RUN ON SHARON HOMEOWNERS )<br>ASSOCIATION, INC.; CEDAR MANAGEMENT )<br>GROUP, LLC; JIXIAN "JOYCE" MU; )<br>ROLANDO VELASQUEZ; THOMAS J. )<br>THURMAN; and THURMAN, WILSON, )<br>BOUTWELL & GALVIN, P.A., )<br>)<br>Defendants. )<br>_____ ) | **MEMORANDUM OF LAW<br>IN SUPPORT OF<br>THURMAN DEFENDANTS'<br>RULE 12 MOTION TO DISMISS** |

NOW COME Defendants Thomas J. Thurman and Thurman, Wilson, Boutwell & Galvin, P.A. (collectively, the "Thurman Defendants"), pursuant to 7(e) of the Rules of Practice and Procedure (W.D.N.C.), and submit the following Memorandum of Law in support of their Rule 12 Motion to Dismiss:

STATEMENT OF THE CASE

Plaintiff Sylvester Sylvan filed his Complaint on or about November 5, 2025, bringing suit against his Homeowners Association ("Quail Run" or the "Association"), a director of that homeowners association ("Mu"), the Association's property management company ("Cedar"), the Association's property manager ("Velasquez"), the Association's counsel ("Thurman"), and Thurman's law firm ("TWBG"). Plaintiff's causes of action include an alleged violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1962(c)), an alleged

RICO conspiracy (18 U.S.C. § 1962(d)), violation of 42 U.S.C. § 1983, Unfair and Deceptive Trade Practices pursuant to N.C.G.S. § 75, and Misprision of Felony (18 U.S.C. § 4).

Plaintiff Sylvan attached the only letter regarding his document requests ever sent to him from the Thurman Defendants (the "Thurman Letter") to his Complaint. (Exh. 19 to Compl.). From this letter, and with the apparent help of an AI-LLM, Plaintiff has extrapolated the allegations against the Thurman Defendants contained in the Complaint, including RICO and UDTP violations. Those allegations characterize the Association's partial denial of Sylvan's broad document inspection requests—which was communicated through Thurman—as "coordinated cease and desist demand letters" (plural), intimidation, suppression, and a "scheme to legitimize false financial representations." (Compl. ¶12).

## LEGAL STANDARD

Reviewing a motion to dismiss under FED. R. CIV. P. 12(b)(6), the Court accepts as true all factual allegations in the Complaint and draws all reasonable inferences in the light most favorable to the non-movant. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). But to survive a Rule 12(b)(6) motion, the non-movant's "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 555). Thus, Plaintiff's Complaint can survive a 12(b)(6) motion only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based

upon "its judicial experience and common sense." *Id.* at 679 (citations omitted). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,' and therefore should be dismissed." *McGhie v. Tr. Servs. of the Carolinas Substitute Tr., LLC*, CIVIL NO. 3:16-CV-44-MOC-DSC (W.D. N.C. Jul 12, 2016), 5 (quoting *Iqbal* at 679).

Courts may afford some latitude to pro se litigants, but a court "cannot act as the pro se plaintiff's advocate or develop claims which the plaintiff failed to raise clearly on the face of his complaint." *Id*. (citing *Gordon v. Leeke*, 574 F.2d 1147, 1152 (4th Cir. 1978)). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." **FED. R. CIV. P.** Rule 9(b).

ARGUMENT

I. **PLAINTIFF CANNOT BRING A CAUSE OF ACTION FOR MISPRISION OF FELONY UNDER 18 U.S.C. § 4 BECAUSE IT IS A CRIMINAL STATUTE WITH NO CIVIL RIGHT OF ACTION.**

18 U.S.C. Part I is titled "Crimes." 18 U.S.C. § 4 ("Misprision of Felony") reads as follows: "Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both."

"…[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). "The question whether an implied right of action may be found in federal statutes is basically guided by the multifactored test of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). But at least since *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), it has been

clear that the ultimate question will always be whether Congress intended to create the asserted cause of action." *Ridenour v. Andrews Federal Credit Union*, 897 F.2d 715, 720 (4th Cir. 1990).

The statute at issue here does not contain any indication of a private right of action. 18 U.S.C. § 4. It also has a clear remedy for the state: fine or imprisonment—neither of which can belong to a private citizen. Id. When presented with this question, other federal trial courts have regularly rejected the idea that there is a private right of action for misprision of felony. *See Tuck v. McMullen*, Case No.: 19-cv-1505-WQH-RBB (S.D. Cal., Apr 13, 2020); *see also Reed v. East End Props., Inc.*, No. ED CV 17-955-DMG (KKx), 2018 U.S. Dist. LEXIS 228558, at \*14 (C.D. Cal., Mar. 15, 2018) (concluding that plaintiffs lacked standing to bring claim for misprision of felony); *Gilreath v. Bach*, No. EDCV 17-0694-DOC (JEM), 2017 U.S. Dist. LEXIS 188346, at \*13 (C.D. Cal., Oct. 11, 2017) (18 U.S.C. § 4 is a "criminal statute[ ] for which there is no private right of action"); *Scott v. Cal. Dep't of Corr. & Rehab.*, No. 10cv0917 IEG (CAB), 2010 U.S. Dist. LEXIS 59989, at \*4 (S.D. Cal., June 16, 2010) (finding no private right of action for misprision of felony).

Therefore, Plaintiff has failed to state a claim upon which relief can be granted, and Plaintiff's claim of misprision of felony must be dismissed with prejudice.

### II. PLAINTIFF HAS FAILED TO ALLEGE A VIABLE RICO CLAIM OR RICO CONSPIRACY CLAIM AGAINST THE THURMAN DEFENDANTS.

The RICO statute provides as follows: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

In his attempt to implicate the Thurman Defendants in this action, Plaintiff has alleged a general legal conclusion that the Thurman Defendants engaged in sweeping misconduct, including: violations

of N.C.G.S. § 47F and § 47F-3-118 (which is not the correct citation for the North Carolina Condominium Act), violation of N.C.G.S. § 55A Senate Bill 376, unfair and deceptive trade practices, common law fraud, civil conspiracy, breach of fiduciary duty, obstruction of justice, mail fraud, wire fraud, racketeering, and racketeering conspiracy. (Compl. ¶¶23-25). However, as these are mere legal conclusions, they are not entitled to a presumption of truth and should be discarded in the Court's analysis under Rule 12. *Iqbal* at 678. The *only* factual allegations pled by Plaintiff as to the Thurman Defendants which are not legal conclusions or recitations of a cause of action are as follows:

- Thurman represented the Association ("and/or Cedar") and disseminated "coordinated cease-and-desist and demand letters"[1] directed at Plaintiff. (Compl. ¶12).

- TWBG "issued correspondence on official letterhead to Plaintiff on behalf of the HOA and Cedar. (Compl. ¶13).

- The Thurman Defendants issued "coordinated threat letters" to Plaintiff. (Compl. ¶23-25).

- Thurman "continued coordinated intimidation, refusal of audits, and obstruction." (Compl. ¶¶26-29).

Plaintiff's Complaint describes nothing more than the Thurman Defendants' legal representation of the Association in the context of one single letter. The letter itself contains no factual representations made by the Thurman Defendants which could even serve as a basis for a fraud claim or racketeering. (Id.). The Complaint also does not allege any wire transaction involving the Thurman Defendants at all. As to the fraud allegations, the Complaint does not make any *particular allegations* which would support any cause of action for fraud against the Thurman Defendants, as required by **FED. R. CIV. P.** Rule 9(b). The only communication identified in the Complaint (merely because it

---

[1] Despite alleging a pattern of letters (plural), Plaintiff has only attached one to his Complaint because, in fact, that is the only letter mailed to him by the Thurman Defendants in this matter.

is attached as an exhibit) is a letter from Thurman partially denying a request for inspection of documents based on North Carolina law and explaining that a request which complies with N.C.G.S. § 55A would be needed to view accounting records of the Association. (Compl., Exh. 19.).

Furthermore, Plaintiff has failed to plead any facts which would support the contention that the Thurman Defendants "conducted or participated in" racketeering activity. The phrase "conduct or participate in" has been construed to mean management or direction:

> Once we understand the word "conduct" to require some degree of direction and the word "participate" to require some part in that direction, the meaning of § 1962(c) comes into focus. In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs.

*Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). The facts alleged regarding the Thurman Defendants merely demonstrate legal representation of the Association as to a single request for inspection of documents sent by Plaintiff. This is not conduct which could plausibly be construed as "racketeering" or a unified "conspiracy" to engage in racketeering. The allegation that the Thurman Defendants' letter somehow furthered a "scheme" of the other defendants (Compl. ¶13) is conclusory and insufficient to establish a plausible cause of action.

Finally, Plaintiff's complaint alleges no nexus between the conduct of the Thurman Defendants and any damages suffered by him. The allegation that he suffered "injury to business, property, and emotional well-being" (Compl. ¶32) is not supported by any factual allegation connected to the Thurman Defendants, save at most the idea that he "expended time and money trying to obtain records." (Id.). That allegation is abstract, conclusory, and does not sufficiently allege any proximate causation between Thurman's letter and any concrete loss.

At this stage, Plaintiff's Complaint alleges almost no meaningful factual details regarding the Thurman Defendants save for the solitary letter they sent to him as the Association's counsel. Plaintiff cannot be allowed to maintain a RICO action against them simply by using artificial intelligence to plead broad, formulaic legal conclusions. For these reasons, the Plaintiff's RICO causes of action must

be dismissed as to the Thurman Defendants.

> **III. PLAINTIFF'S CIVIL RIGHTS CAUSE OF ACTION IS NOT APPLICABLE TO THE THURMAN DEFENDANTS, WHO ARE PRIVATE ACTORS AND MUST THEREFORE BE DISMISSED.**

It is well-settled that 42 U.S.C. § 1983 only provides a cause of action against state actors or for conduct which is closely tied to a state actor; as stated by the Fourth Circuit in *Debauche v. Trani*:

> To implicate 42 U.S.C. § 1983, conduct must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (observing that § 1983's "under color" of law requirement is equivalent to the "state action" requirement of the Fourteenth Amendment (citing United States v. Price, 383 U.S. 787, 794 n.7 (1966))). The person charged must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions. *See, e.g., Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991).

191 F.3d 499, 509 (4th Cir. 1999). There are four recognized circumstances under which a private party can be deemed to be a state actor: (1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen. *Andrews v. Federal Home Loan Bank of Atlanta*, 998 F.2d 214, 217 (4th Cir. 1993). "If the conduct does not fall into one of these four categories, then the private conduct is not an action of the state." *Id*.

There is no allegation in the Complaint which could plausibly place the Thurman Defendants (or Thurman's letter) into any of these categories. Plaintiff alleges that Defendants exercised "state-delegated lien, fine and foreclosure powers" and acted under the color of state law. (Compl. ¶46). However, the Complaint fails to allege that the Thurman Defendants sent Plaintiff a demand letter or claim of lien regarding assessments or fines, or that they corresponded with him about them in any way—which is because that did not occur. (Compl., Exh. 19).

The Thurman Defendants are an attorney and law firm, respectively, but that is insufficient to

remove them from the sphere of private actors or deem their conduct "fairly attributable to the state." *Id*. This is illustrated by the ruling in *Womack v. Oxley* (offered for persuasion only), in which this Court followed *Trani* and dismissed a cause of action brought by a Plaintiff against an attorney serving as Guardian of the Estate for the Plaintiff's mother, despite the fact that the Defendant had extensive "state-delegated" authority as guardian. Case No. 1:18-cv-00266-MR-DLH (W.D.N.C. Sep 28, 2018). Furthermore, Fourth Circuit precedent has already held that deed of trust foreclosures—which are substantially similar in nature to Claim of Lien foreclosures—do not involve "state action" to support a Fourteenth Amendment claim. *Levine v. Stein*, 560 F.2d 1175 (4th Cir., 1977). For these reasons, Plaintiff's cause of action for violation of civil rights should be dismissed as to the Thurman Defendants.

### IV. PLAINTIFF'S UNFAIR AND DECEPTIVE TRADE PRACTICES CLAIM CANNOT BE MAINTAINED AGAINST THE THURMAN DEFENDANTS SINCE THEY FALL UNDER THE "LEARNED PROFESSION" EXEMPTION.

In 2000, the North Carolina Court of Appeals handed down an opinion in *Reid v. Ayers* addressing this exact issue. 531 S.E.2d 231, 138 NC App. 261 (2000). In that case, the plaintiffs were homeowners in an HOA for which the defendants served as legal counsel (both the attorneys and firm were named as defendants). *Id*. 531 S.E.2d at 232. The plaintiffs filed an Unfair and Deceptive Trade Practices action against defendant, alleging illegal collections practices as the unfair or deceptive act, along with claims for infliction of emotional distress, fraud, and civil conspiracy. *Id*. 531 S.E.2d at 232-233. The Court of Appeals affirmed the trial court's dismissal of the plaintiffs' claims, reasoning:

> We need not address all three of these requirements, however, as we find the "in or affecting commerce" requirement to be dispositive here. Our legislature has defined this requirement in the following manner: "`[C]ommerce' includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." N.C. Gen. Stat. § 75-1.1(b) (1999). We conclude that the "learned profession" exemption provided for in the second half of this definition operates to invalidate plaintiffs' claim here … In order for the learned profession exemption to apply, a two-part test must be satisfied. First, the person or entity performing the alleged act must be a member of a learned profession. Noel L.

> Allen, *North Carolina Unfair Business Practice* § 14-3(c) (1995) (citing 47 N.C. Op. Att'y Gen. 118, 119-20 (1977)). Second, the conduct in question must be a rendering of professional services.

*Id*. 531 S.E.2d at 235. The court determined that a law firm attempting to collect a debt on behalf of its homeowners association client satisfied both parts of the test. *Id*.

In the case at bar, the Thurman Defendants are members of a "learned profession" since they are practicing attorneys, and their conduct is a "rendering of professional services," since the letter sent from Thurman to Plaintiff was simply done in the course of representing the Association regarding Mr. Sylvan's request for inspection of documents. Therefore, Plaintiff has failed to state a claim upon which relief can be granted for Unfair and Deceptive Trade Practices as to the Thurman Defendants, and that cause of action must be dismissed too.

## CONCLUSION

For these reasons, the Thurman Defendants respectfully request the dismissal of all causes of action brought against them by Plaintiff in this matter, and for such further relief as the Court deems just and proper.

Respectfully submitted this 2nd day of January, 2026.

    s/Thomas J. Thurman
*Attorney for Defendants Thurman, Wilson, Boutwell & Galvin, P.A. and Thomas J. Thurman*
Thurman, Wilson, Boutwell & Galvin, P.A.
N.C. Bar No. 48115
301 S. McDowell Street, Suite 608
Charlotte, North Carolina 28204
Phone: (704) 377-4164
thomas@twbglaw.com

## CERTIFICATION REGARDING ARTIFICIAL INTELLIGENCE

The undersigned hereby certifies that no artificial intelligence was used in the research for the preparation of this document, with the exception of such artificial intelligence embedded in standard online legal research sources such as Westlaw, Lexis, FastCase, and Bloomberg and that every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This 2nd day of January, 2026.

s/Thomas J. Thurman
*Attorney for Defendants Thurman, Wilson, Boutwell & Galvin, P.A. and Thomas J. Thurman*
Thurman, Wilson, Boutwell & Galvin, P.A.
NC Bar No. 48115
301 S. McDowell Street, Suite 608
Charlotte, North Carolina 28204
Phone: (704) 377-4164
thomas@twbglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, on this day, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

In addition, I hereby certify that a copy of the foregoing document was served upon the Plaintiff via first class mail, postage prepaid, addressed to:

Sylvester Sylvan
7969-75 Shady Oak Trail
Charlotte, NC 28210

This the 2nd day of January, 2026.

s/Thomas J. Thurman
*Attorney for Defendants Thurman, Wilson, Boutwell & Galvin, P.A. and Thomas J. Thurman*
Thurman, Wilson, Boutwell & Galvin, P.A.
NC Bar No. 48115
301 S. McDowell Street, Suite 608
Charlotte, North Carolina 28204
Phone: (704) 377-4164
thomas@twbglaw.com